| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:13-CR-38(17) |
| | § | |
| ROMEZ JOSE SABAGH CAJELI | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Romez Jose Sabagh Cajeli's ("Sabagh Cajeli") *pro se* Letter Motion (#753), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of the Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motion (#757). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.   Background

Sabagh Cajeli's offense of conviction stems from his participation in an international drug-trafficking conspiracy. On February 14, 2013, a federal grand jury in the Eastern District of Texas returned a four-count First Superseding Indictment against Sabagh Cajeli and 16 codefendants, charging Sabagh Cajeli in Count 1 with Conspiracy to Possess With the Intent to Manufacture and Distribute Cocaine, in violation of 21 U.S.C. § 846; in Count 2 with Conspiracy to Import Cocaine and to Manufacture and Distribute Cocaine Intending and Knowing that the Cocaine Will Be Unlawfully Imported Into the United States, in violation of 21 U.S.C. § 963; in Count 3 with Manufacturing and Distributing Cocaine Intending and Knowing that the Cocaine Will Be Unlawfully Imported Into the United States, in violation of 21 U.S.C. § 959 and 18

U.S.C. § 2; and in Count 4 with Conspiracy to Possess With the Intent to Distribute Cocaine While on Board a Vessel Subject to the Jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a-b). On October 6, 2016, Sabagh Cajeli pleaded guilty to Count 1 of the First Superseding Indictment pursuant to a non-binding plea agreement. Subsequently, on March 12, 2017, the court sentenced Sabagh Cajeli to 135 months' imprisonment, to be followed by a 2-year term of supervised release. Sabagh Cajeli is currently housed at Correctional Institution Big Spring ("CI Big Spring"), located in Big Spring, Texas. His projected release date is March 26, 2023.

II.    Analysis

    A.    Exhaustion of Administrative Remedies

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the

> defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").

Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Sabagh Cajeli does not contend that he submitted a request for compassionate release, and, according to James D. Crook, a supervisory attorney with the BOP, the BOP has no record of either a compassionate release or reduction in sentence request being filed by Sabagh Cajeli. Thus, Sabagh Cajeli is foreclosed from obtaining relief because he has not submitted a request for compassionate release to the warden of the facility where he is housed. Moreover, the court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *See Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *Alam*, 960 F.3d

at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Accordingly, at this time, the court does not have the authority to grant the relief Sabagh Cajeli requests. Moreover, even if Sabagh Cajeli had complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release he must establish three criteria. *United States v. Shkambi*, ___ F.3d ___, No. 20-40543, 2021 WL 1291609, at * 3 (5th Cir. Apr. 7, 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant

is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at *2. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at *3. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Id*.

Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Shkambi*, 2021 WL 1291609, at * 3. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2] However, § 1B1.13 references only motions filed by "the Director of the

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

6

[BOP]"—not an individual defendant.³  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *Id*. at *4.  Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

> B.  Medical Conditions

In the instant motion, Sabagh Cajeli, age 60, contends that he is eligible for compassionate release due to his medical conditions—specifically, high blood pressure and high cholesterol.  He also claims that he has a family history of cancer.  Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with

---

³ U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

When interviewed in connection with his Presentence Investigation Report ("PSR"), prepared on December 8, 2016, Sabagh Cajeli reported that he suffered from high blood pressure for which he was prescribed losartan and hydrochlorothiazide. Sabagh Cajeli's prison medical records reveal that he has been diagnosed with hypertension, hyperlipidemia, hemorrhoids, constipation, a hernia, and allergic rhinitis, and that he is prescribed fiber-lax, aspirin, amlodipine, claritin, minerin (eucerin) cream, and tar shampoo. Unfortunately, his medical records reflect that Sabagh Cajeli has a history of severe adverse reactions to statins, which are often prescribed to treat high cholesterol. Therefore, according to his medical records, he exercises and watches his diet closely. On October 21, 2020, Sabagh Cajeli had a blood pressure reading of 136/82[4], and his medical records noted: "Hypertension at goal." Test results, dated February 25, 2021, indicate that Sabagh Cajeli's cholesterol levels remain high.

Sabagh Cajeli is classified as a BOP medical Care Level 2 inmate. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be

---

[4] According to the Centers for Disease Control and Prevention ("CDC"), a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

managed through routine, regularly scheduled appointments with clinicians for monitoring." Indeed, none of Sabagh Cajeli's medical conditions are terminal or substantially diminish his ability to provide self-care nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433. To the contrary, Sabagh Cajeli's conditions are for the most part well managed with medication. *See id.*

The court acknowledges that, according to the CDC website, hypertension can make Sabagh Cajeli more likely to become severely ill should he contract COVID-19; nonetheless, such a commonplace malady does not make Sabagh Cajeli's case "extraordinary." *See id.* at 434. According to the CDC, nearly half of the adult population in the United States has hypertension. Due to its prevalence, hypertension cannot be deemed "extraordinary" in order to merit compassionate release. *See id.* (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Hodgin*, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *3 (D.S.D. Mar. 11, 2021) (denying compassionate release to inmate who suffers from hypertension, hyperlipidemia, kidney disease, Type 2 diabetes, arthritis, and several other medical conditions); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase his risk for severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence).

9

Sabagh Cajeli also claims that he has a family history of cancer. Sabagh Cajeli's reliance on his family history of cancer to establish extraordinary and compelling reasons for compassionate release is misplaced. A family history of certain afflictions and a fear of developing medical problems do not create a current medical diagnosis, nor do they diminish Sabagh Cajeli's present ability to provide self-care while incarcerated. *See generally United States v. Diggles*, No. 9:15-CR-00024-RC, 2020 WL 6471725, at *3 (E.D. Tex. Sept. 9, 2020), *adopted by* No. 9:15-CR-24-RC, 2020 WL 6450469 (E.D. Tex. Nov. 2, 2020). Moreover, Sabagh Cajeli's prison records reveal that he is housed in general population, has regular duty work assignments, is cleared for food service, and his current work detail is food service department/barber shop. Thus, Sabagh Cajeli has failed to establish the existence of medical conditions that would constitute extraordinary and compelling reasons to reduce his sentence.

C.  Age

Sabagh Cajeli asserts that he is eligible for compassionate release due to his age. While not binding on the court, the U.S.S.G. provides that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1(B). Here, according to Sabagh Cajeli's PSR, he is 60 years of age, and there is no indication that he is experiencing serious deterioration in his physical or mental health. According to the Administration on Aging, the population of persons in the United States over the age of 60 was 68.7 million in 2016, a 36% increase from 50.7 million in 2006, and was

projected to increase substantially over the following decade. Hence, Sabagh Cajeli's age cannot be deemed extraordinary. Therefore, the court does not find that Sabagh Cajeli's age constitutes an extraordinary and compelling reason justifying compassionate release.

As an alternative to finding "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A)(ii) allows modification of a term of imprisonment for age-related reasons when:

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community as provided under section 3142(g).

18 U.S.C. § 3582(c)(1)(A)(ii). Sabagh Cajeli is only 60 years of age, 10 years below the threshold of 70 years of age, and he has not served at least 30 years in prison. Accordingly, Sabagh Cajeli also does not meet the statutory requirements for age-related compassionate release set forth in 18 U.S.C. § 3582(c)(1)(A)(ii).

### D. Other Reasons

Sabagh Cajeli also seeks compassionate release due to his post-sentence rehabilitation and the presence of COVID-19 in prison. Sabagh Cajeli maintains that his post-sentence rehabilitation, evidenced by a list of courses he has completed and programs he has started, warrant a reduction in his sentence. While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 2021 WL 1291609, at *3; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'"

11

(quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act).

In addition, Sabagh Cajeli expresses concerns regarding the spread of COVID-19 among the prison population. Nevertheless, as of April 22, 2021, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 1,584) at CI Big Spring as having confirmed positive cases of COVID-19, 529 inmates who have recovered, and 1 inmate who succumbed to the disease. Thus, it appears that the facility where Sabagh Cajeli is housed is handling the outbreak appropriately and providing adequate medical care.

Although Sabagh Cajeli expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Sabagh Cajeli, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR

15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, it is well settled that "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94. In exercising its discretion, the court finds that

Sabagh Cajeli has failed to establish that a medical condition, his age, or other reasons exist that would constitute extraordinary and compelling reasons to release him from prison.

    E.    <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Shkambi,* 2021 WL 1291609, at *3; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94. Sabagh Cajeli's offense of conviction entails his participation in a large-scale, international drug-trafficking conspiracy in which he admitted that he was responsible for the distribution of 450 kilograms or more of cocaine. The drug-trafficking organization with which Sabagh Cajeli was affiliated was based in Columbia and was associated with the seizure of 4,102 kilograms of cocaine between 2009 and 2012. For his role in the conspiracy, Sabagh Cajeli assisted coconspirators in the smuggling of drug proceeds derived from the sale of cocaine in the United States to Columbia. In view of the nature and circumstances of his offense of conviction, including the large quantity of cocaine involved, the court cannot conclude that Sabagh Cajeli's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, granting Sabagh Cajeli compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction'

and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Sabagh Cajeli after he has served just over 67% of his 135-month sentence would similarly minimize the impact of his crime and the seriousness of his offense.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). In this instance, there is no reason to believe that Sabagh Cajeli would not revert to his drug-trafficking and money-smuggling behavior if released from prison at this time.

III.    Conclusion

In short, Sabagh Cajeli has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail,

alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Sabagh Cajeli's *pro se* Letter Motion (#753) is DENIED.

SIGNED at Beaumont, Texas, this 23rd day of April, 2021.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE